[Crim. No. 591.   Third Appellate District.—February 21, 1922.]

## THE PEOPLE, Respondent, v. WILLIAM J. AHERN et al., Appellants.

[1] CRIMINAL LAW—LARCENY—TAKING OF MARE—INTENT—EVIDENCE —VERDICT—APPEAL.—In a prosecution for the larceny of a "sorrel mare" it is for the jury to determine, from all the circumstances of the case, whether the act of the defendants in taking the mare was or was not with a criminal intent or an intent to steal the animal; and in this prosecution the appellate court could not say that the determination of the jury upon that question was not correct or that its verdict was against the evidence.

[2] ID.—RECOGNITION OF DEFENDANTS — HEARSAY EVIDENCE — ERROR WITHOUT PREJUDICE.—It having developed on cross-examination of one of the witnesses for the prosecution that his testimony on direct examination relating to his recognition of the defendants as the persons who took the mare in question was pure hearsay, it was error to deny the defendants' motion to strike such testimony from the record; but that fact and the guilt of the defendants having been conclusively established by the testimony of other witnesses, no miscarriage of justice could have resulted from such erroneous ruling.

[3] ID.—ADMISSION OF REVOLVER IN EVIDENCE—PROOF OF CRIMINAL INTENT.—Notwithstanding the testimony of the defendant that he had no revolver in his possession at the time he was accosted by the owner of the mare and was told that the animal was the property of the latter and that he was not in the habit of carrying a weapon, the owner having testified that the defendant drew a revolver and threatened to blow his brains out if he came near and another witness having testified to having seen some article drop from the hand of the defendant near the place and time where and when the alleged threat was made, the revolver, the cylinder and the cartridges found at that place and near that time were admissible for what such evidence was worth, as tending in some measure to show that the taking of the mare was with a criminal intent.

APPEAL from a judgment of the Superior Court of Merced County.   E. N. Rector, Judge.   Affirmed.

The facts are stated in the opinion of the court.

John A. Wall for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendants were charged by information filed in the superior court of the county of Merced with the larceny of a "sorrel mare" alleged to be the property of one David Saling, and upon a trial upon said charge were convicted.

They appeal from the judgment and the order refusing to grant their motion for a new trial.

They object to the verdict on these general grounds: That the verdict is against law and against the evidence, and that the court committed prejudicial error in the allowance, over their objection, of certain evidence.

Both defendants were, at the time of the commission of the crime charged, convicts on parole, and were employed as laborers on what is known as the "Holland Farm," in Merced County, the property of Miller & Lux.

David Saling, owner of the alleged stolen animal, resided with his father and mother on a farm about a mile and a half from the town of Dos Palos, in Merced County. The evidence introduced by the people disclosed that the alleged larceny was committed under the following circumstances: On Sunday, July 10, 1921, in the middle of the afternoon of said day, one Charles Griffin, who was then stopping at the home of the Salings, desiring to go to Dos Palos, borrowed the sorrel mare referred to from said David Saling to ride to said town. Thus proceeding to Dos Palos, he reached that town about 3 o'clock P. M., dismounted and hitched the mare to a hitching-rack on the main street of said town. Just as he was engaged in doing this act, he saw the two defendants, in a cart, drawn by a single horse, passing along the street. After hitching the mare as indicated he went into a pool-room and remained therein for some ten or fifteen minutes, when he stepped to the door and looked out and down toward the place where he had hitched the animal and observed that she was missing. He immediately started an investigation and, looking toward the west, he saw a man riding the mare. This man proceeded a short distance until he came to another road leading in a westerly direction and there joined the defendant Major, who was still in the cart. Griffin started after the two men, and the defendants, observing that they were being pursued, started the horses in a rapid gait and went toward the west, the

two horses, the mare ridden by Ahern and the horse hitched to the cart and driven by Major, being then abreast. After going a short distance they turned to the south on a road which leads to the home of the Salings. Henry Saling, father of David Saling, and Mrs. Saling, the mother of David, were sitting on the front porch of their home, from which they could see the road on which the defendants were traveling. David Saling and a young lady were out in the yard engaged in conversation. The mother of David, being attracted to the lively gait at which the horses were traveling toward their place, recognized the sorrel mare of her son and she thereupon called his attention to the fact that someone was riding his mare. David Saling immediately started toward the road, at about which time the horses reached the entrance to the Saling premises and the sorrel mare lessened her gait and attempted to go into the yard, the defendant Ahern, who was riding the mare, reining her into a different direction, not, however, until young Saling stated to him that the mare belonged to him and attempted to take hold of the bridle. Upon this statement and act by David, Ahern drew a revolver, cautioned young Saling not to come near him and threatened that if he did he "would blow his [Saling's] head off." The defendant then proceeded on his way, riding the mare. Young Saling immediately procured and mounted another horse and followed Ahern to South Dos Palos, in which direction Ahern was traveling, and made a search for the animal. He finally saw one of the defendants standing in a planing-mill in South Dos Palos and, approaching him, asked where his mare was. The defendant stated that he knew nothing at all about his mare. Making a further search, Saling saw the mare standing inside the planing-mill and approximately at the same time the defendants opened a door to the mill and again started out on the road, Major driving the cart and Ahern riding the mare, going at a rapid gait. They went out side by side on the road leading to a place called Ora Loma and after they had gone about half a mile Ahern rode out into a field and Major went on toward the canals in a different direction. Young Saling then returned to South Dos Palos to obtain assistance. He started back with some men who had consented to help him in securing possession of his mare and when about a half a mile out they saw Major

driving the horse and cart, traveling toward them. They asked Major what had become of the man who was riding the mare and he said he "did not know anything about it." Proceeding a little farther, Saling observed Ahern riding the mare through the field. They then started after him and Ahern, apparently observing them, rode the mare to the head-gate of one of the canals and into the canal, evidently intending to cross the ditch at that point. The water, however, was running over the headgate and after the mare got into the canal and he saw Saling and his companions closing in upon him he left the animal in the canal and proceeded to crawl along the ditch as if to prevent being seen. Young Saling, assisted by the men who accompanied him, got the mare out of the ditch and thereafter caused the defendants to be arrested and charged with the crime of which they stand convicted.

It should be added to the above statement of the facts that at the time Ahern drew his weapon and threatened to take the life of David Saling the young lady who was at the Saling home saw something drop from the former's hand to the ground. After the defendant started on his way from the Saling place, the young lady referred to went out to the spot where Ahern was at the time he drew his weapon and made a search for the object which she had seen drop and found the cylinder of a revolver and several cartridges. Later a revolver without a cylinder was found near the same spot.

The story of the defendants was, in substance, that they went to Dos Palos on the day above mentioned in a cart drawn by a horse which they had borrowed from the superintendent of the farm on which they were working, that at said place they stopped, bought some tobacco, took a number of drinks of liquor and then returned to the farm. They denied having taken the mare of David Saling and positively declared that they knew nothing whatever about the mare or about any horse of any kind having been taken by anybody that day. Ahern added, however, that if he did take the mare it was not with any intention of stealing her. He further stated that he had no revolver in his possession that day and that he made no threat against young Saling. They also testified that young Saling, a few days

after the alleged taking of his mare under the circumstances above indicated, approached them with the proposition that he would not pursue their prosecution for the theft if they would pay him fifteen dollars for the damages which he claimed to have sustained by reason of the taking of his animal.

The contention that the verdict is against law is not pressed by the defendants or, at any rate, there is no complaint made by them against the charge of the court to the jury or any portion thereof.

[1] As to the contention that the verdict is against the evidence, it is only necessary to refer to the above recital of the facts as they were brought out by the evidence, to show that the point is not well taken. David Saling's testimony from which said facts are taken was corroborated in all vital particulars by the testimony of his father, his mother, and the young lady referred to above and some other witnesses. It is, however, with apparent earnestness insisted by the counsel for the defendants that, viewing the circumstances of the case as a whole, it is clear that the defendants had no intention of stealing the animal, but that they took her as indicated for no other purpose than to have a little sport—a sort of "joy-ride" we may suppose. In support of his position as to the effect of the evidence as thus stated counsel cites the case of *People* v. *Brown,* 105 Cal. 69 [38 Pac. 519], in which a boy was charged with the crime of burglary in that he entered a building and took a bicycle therefrom and in his defense stated that he took it only to get even with the boy who owned it, there having been previously some quarrel or misunderstanding between the two, and that he had no intention of keeping the bicycle but intended to return it within a few hours. The trial court instructed the jury, that even if it were true that a party should take property under the circumstances as disclosed by the boy's testimony in that case—that is, with the intention only of temporarily retaining it or of not permanently depriving the owner thereof—he would, nevertheless, be guilty of larceny. The case was reversed for the giving of that instruction, the supreme court declaring that it not only involved an erroneous statement of the law, but, since the hypothetical case stated therein squared exactly with the facts as they were testified to by the boy, it impinged upon

the province of the jury—that is, that it involved an instruction upon a question of fact. The court further said that "the authorities form an unbroken line to the effect that the felonious intent must be to deprive the owner of the property *permanently.*"

It is, of course, plainly manifest that the above case is no authority here. The point made by counsel does not involve the giving of an instruction. It simply involves the claim that the evidence does not show a criminal intent, but it is very clear that that question has been foreclosed by the verdict of the jury. It was for them to determine, from all the circumstances of the case, whether the act of the defendants in taking the mare was or was not with a criminal intent or an intent to steal the animal, and it is equally clear that this court cannot say that the determination of the jury upon that question is not correct.

The defendants assign two errors in the ruling of the court with respect to the evidence. [2] The first objection in this particular involves the action of the court in refusing to strike out certain portions of the testimony of the witness Charles Griffin. This witness, after testifying on direct examination that he recognized the defendants as the parties who were driving down the road, the one riding upon the mare and the other riding in the cart, as above described, admitted on cross-examination that he did not at that time recognize the defendants as the men, but obtained from other persons the information that they were the men who took the mare away. The counsel for the defendants thereupon moved to strike the testimony from the record. The court denied the motion. This was error, inasmuch as it developed on cross-examination that the testimony of the witness on direct examination that he recognized the defendants at the time referred to was pure hearsay and, consequently, incompetent; but four or five other witnesses identified the defendants as being the persons who had possession of the mare and that Ahern was riding her, and thus the evidence appears to be conclusive of the fact that the defendants were the persons who took the mare from the town of Dos Palos and to the place on the Holland Farm where she was found and conclusive of the guilt of the defendants. It is, therefore, clear that no miscarriage of justice resulted from the erroneous ruling.

56 Cal. App.—37

[3]   The second assignment against the rulings is based upon the action of the court in admitting in evidence, over protest by the defendant, the revolver, the cylinder and the cartridges.   The ground of the objection at the trial was and here is that those articles were not properly or in any way connected with the defendants or their conduct at the time that they were accosted by David Saling and by him told that the mare was his property.   It is true that Ahern testified that he had no revolver in his possession on that occasion and that he was not in the habit of carrying a weapon, but, notwithstanding this testimony, we think that, considering the circumstance that the articles were found near the place and time where and when the alleged threat was made, and the further circumstance that some article was seen by one of the witnesses to drop from the hand of the defendant at that time and place, the testimony was admissible for what it was worth and that, consequently, the objection thereto goes more to its weight than to its competency.   It may also be suggested that the evidence regarding the revolver, etc., or even that of the threat, while important in that it might tend in some measure to show that the taking of the mare was with a criminal intent, was not indispensable to the justification of a verdict of guilty of the crime charged in the information, and that, even if erroneous, in view of the fact that there is ample competent proof of guilt, the ruling allowing said evidence is without prejudice.   (Const., art. VI, sec. 4½.)

We have found no prejudicial error in the record and the judgment and the order are, therefore, affirmed.

Burnett, J., and Finch, P. J., concurred.